**No. 21-6057**

---

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

**PETER CANAVAN NEWBERRY, Appellant-Plaintiff**

v.

**SERVICE EXPERTS HEATING & AIR, et al., Appellees-Defendants**

---

**On Appeal from the United States District Court
For the Eastern District of Kentucky (Lexington)
Hon. Judge Joseph M. Hood
Case No. 5:17-cv-00131**

---

**BRIEF OF APPELLANT**

**PETER CANAVAN NEWBERRY**

---

**Peter Canavan Newberry, *pro se*
1217 Criswell Road
Berry, Kentucky 41003
Direct Dial: (513) 608-4312
E-Mail: peter.newberry@fuse.net**

**ORAL ARGUMENT REQUESTED**

No. 21-6057

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | |
|---|---|
| PETER CANAVAN NEWBERRY, | ) |
| | ) |
| **Plaintiff-Appellant** | ) |
| v. | ) |
| | ) |
| SERVICE EXPERTS HEATING | ) |
| & AIR, et al. | ) |
| | ) |
| **Defendants-Appellees** | ) |

## CIRCUIT RULE 26.1 DISCLOSURE OF CORPORATE AFFILIATION AND FINANCIAL INTEREST

Plaintiff-Appellant Peter Canavan Newberry, pursuant to 6th Cir. R. 26.1

and FRAP 26.1, makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned company?

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a

financial interest in the outcome?

No.

Respectfully submitted,

s/ Peter Canavan Newberry
Peter Canavan Newberry, #86794
1217 Criswell Road
Berry, Kentucky 41003
Direct Dial: (513) 608-4312
E-Mail:  peter.newberry@fuse.net

ii

# **TABLE OF CONTENTS**

DISCLOSURE OF CORPORATE AFFILIATION AND FINANCIAL
INTEREST ............................................................................................. ii

TABLE OF AUTHORITIES .............................................................. iv-v

STATEMENT REGARDING ORAL ARGUMENT ........................... v-vi

STATEMENT OF JURISDICTION .......................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............1

STATEMENT OF THE CASE ............................................................ 2-5

STATEMENT OF THE FACTS .......................................................... 5-8

SUMMARY OF ARGUMENT ......................................................... 8-11

ARGUMENT .................................................................................. 11-39

    I.   Whether the Trial Court erred in finding that Plaintiff's claims of fraud (Count Seven), breach of contract (Count Eight), and unjust enrichment (Count Nine) are time barred because the Statutes of Limitation did not commence until the time of performance of the contract allegedly repudiated prior to time for performance, and the Trial Court's denial of Plaintiff's request for an evidentiary hearing. .................................... 11-23

    II.  Whether the Trial Court erred in its denial of Plaintiff's request for sanctions and attorney fees against Defendant for Defendant's commission of fraud upon the Court with its material and knowing misrepresentations of fact to the Court, which caused the Trial Court to err in both its finding of facts, application of law, and its application of the summary judgment standard, and the Trial Court's denial of Plaintiff's request for an evidentiary hearing.

          Plaintiff Petitions this Court to dismiss the Summary Judgment obtained by Defendant's fraud upon the Court, sanction Defendant, and award attorney fees to Plaintiff. ................................................................. 23-39

CONCLUSION AND RELIEF SOUGHT ...............................................39

CERTIFICATE OF COMPLIANCE.......................................................x

CERTIFICATE OF SERVICE ..............................................................xi

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS .......xii-xiii

## **TABLE OF AUTHORITIES**

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123 (1991) ............... vi, 24, 26

*England v. Doyle*, 281 F.2d 304, 309 (9th Cir. 1960) ...............................38

*Eppes v. Snowden*, 656 F. Supp. 1267 (E.D. Ky 1986)...............................24, 26, 38

*Franconia Associates v. United States*, 536 U.S. 129 (2002)...........................18, 20

*Franconia Associates v. United States*, 536 U.S. 129, 146-47, 150. (2002)...........20

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)....................vi

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 64 S. Ct. 997 (1944) ........................................................................24

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, at page 246, 64 S. Ct. 997, at page 1001, 88 L. Ed. 1250 (1944).........................................25

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 64 S. Ct. 997 (1944)........................................................................26, 38

*Kinsey v. United States*, 852 F.2d 556, 558 (Fed. Cir. 1988) ........................... 18-19

*Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 464 (6th Cir. 2013)...............11

*Newberry v. SEHAC*, Case: 18-6028, R.E. 26-2, Page 19 (6th Cir. 2020)....................................................................14, 16, 28, 29, 30

*Newberry v. SEHAC*, Case: 18-6028, R.E. 26-2, Page 20 (6th Cir. 2020) ................9

*Newberry v. SEHAC*, Case: 18-6028, R.E. 26-2, Page 24 and 20
(6th Cir. 2020) ....................................................................................................10

*Ragland v. DiGiuro*, 352 S.W.3d 908, 912 (Ky.App. 2010) (quoting *Cuppy v. Gen. Acc. Fire & Life Assur. Corp.*, 378 S.W.2d 629, 631 (Ky. 1964)) .................... 11-12

*Roehm v. Horst*, 178 U.S. 1, 13 (1900) ............................................................18, 20

*Rorick v. Service Experts Heating & Air Conditioning LLC, et al.*,
Case: 21-6061 (6th Cir. 2020) .......................................................................22

*Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App. 1996) ...................................11, 24

*Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585 (9th Cir. 1983) ......................24, 26

## STATUTES AND RULES

28 U.S.C. §1332(a) ..............................................................................................1

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

In accordance with Fed. R. App. P. 34(a) and 6 Cir. R. 34(a), Plaintiff-Appellant. Peter Newberry ("Appellant") respectfully submits that this appeal warrants Oral Argument. When a party acts in bad faith, vexatiously and wantonly manipulates a court through misrepresentations, deceit, and false statements of fact to arrive at a decision in its favor through fraud, the very temple of justice has been defiled, and the imposition of sanctions transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to

police itself. Chambers v. NASCO, Inc. - 501 U.S. 32, 111 S. Ct. 2123 (1991). The law on the subject is clear. In Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944), the Supreme Court set aside a judgment because it found a party and its attorneys engaged in "a deliberately planned and carefully executed scheme to defraud", the Circuit Court of Appeals. Id. at 245. As a result, the Court held it would be manifestly unconscionable to allow the judgment to stand. Id..

Accordingly, In light of the fraud committed upon the trial Court in the case *sub-judice*, and its failure to address the fraud committed upon it, on a perceived procedural technicality under the Federal Rules of Civil Procedure, combined with its denial of any evidentiary hearing, in the face of a record factually contrary to its decision and judgment, this case presents such an attack upon the Court and therefore requires a full hearing before this Court, which will also afford yet another layer of due process protection for the offending party.

## STATEMENT OF JURISDICTION

Subject matter and personal jurisdiction in the District Court of the Eastern District of Kentucky, Covington Division is based upon diversity of citizenship pursuant to 28 U.S.C. §1332(a), Agreement of Parties and Order of Court. Appellant Disputes the jurisdiction of the Lexington Division of the District Court of the Eastern district of Kentucky. (Motion to Transfer, R. E. 26). A Notice of Appeal was timely filed in the Eastern District of Kentucky on November 2, 2021 (Notice of Appeal, R.E. 50).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.      Whether the Trial Court erred in finding that Plaintiff's claims of fraud (Count Seven), breach of contract (Count Eight), and unjust enrichment (Count Nine) are time barred because the Statutes of Limitation did not commence until the time of performance of the contract allegedly repudiated prior to time for performance, and the Trial Court's denial of Plaintiff's request for an evidentiary hearing.

II.     Whether the Trial Court erred in its denial of Plaintiff's request for sanctions and attorney fees against Defendant for Defendant's commission of fraud upon the Court with its material and knowing misrepresentations of fact to the Court, which caused the Trial Court to err in both its finding of facts, application of law, and its application of the summary judgment standard, and the Trial Court's denial of Plaintiff's request for an evidentiary hearing.

        Plaintiff Petitions this Court to dismiss the Summary Judgment obtained by Defendant's fraud upon the Court, sanction Defendant, and award attorney fees to Plaintiff.

## **STATEMENT OF THE CASE**

Appellant-Plaintiff Peter Newberry filed a *pro se* complaint against Appellees-Defendants Service Experts Heating & Air, Service Experts LLC, Lennox Industries, Inc. and Freije Treatment Systems in the Federal District Court for the Eastern District of Kentucky, Covington Division on March 16, 2017. (Complaint, R.E. 1). Appellees-Defendants then filed a motion to dismiss the complaint in the Lexington Division of the Court on April 17, 2017 (Motions to Dismiss, R.E. 10, 11, 12).

Appellant-Plaintiff filed his Responses in Opposition to the Motion to Dismiss on May 8, 2017 (Response in Opposition, R.E. 13, 14 15), and Appellees-Defendants filed Replies to the Responses on May 22, 2017 (Replies, R.E. 17, 18 19).

On April 5, 2018, the Lexington Division District Court granted dismissals (Order of Dismissal, R.E. 21).

On June 15, 2018, Appellant-Plaintiff filed Motion to Transfer (Motion to Transfer, R. E. 26).

On June 20, 2018, Appellees-Defendants filed Response in Opposition to Motion to Transfer (Response to Motion to Transfer, R.E. 27).

On July 4, 2018, Appellant-Plaintiff filed Reply (Reply, R.E. 28).

On August 28, 2018, the Lexington Division District Court Denied Motion to Transfer (Memorandum Opinion & Order, R.E. 30).

On August 29, 2018 the Lexington Division District Court Entered Judgment, Dismissing Defendants Service Experts Heating & Air Conditioning, Service Experts, LLC, and Lennox Industries, Inc. With Prejudice (Judgment, R.E. 31)

On September 28, 2018, Appellant-Plaintiff filed Notice of Appeal (Notice of Appeal, R.E. 32)

On March 5, 2020, the United States Court of Appeals (USCA) issued its Order/Judgment reversing the District Court's Judgment dismissing Appellant-Plaintiff's claims for fraud, breach of contract and unjust enrichment and remand for further consideration. District Court's Judgment is affirmed on all other aspects (Judgment, R.E. 35)

On June 22, 2020, Appellees-Defendants filed Motion for Summary Judgment (Motion for Summary Judgment, R.E. 40)

On July 13, 2020, Appellant-Plaintiff filed Response in Opposition to Motion for Summary Judgment (Response in Opposition to Motion for Summary Judgment, R.E. 41)

On July 27, 2020, Appellees-Defendants filed Reply to Response in Opposition to Motion for Summary Judgment (Reply to Response to Motion for Summary Judgment, R.E. 43)

On July 29, 2020, Appellant-Plaintiff filed Motion for Leave to File Sur-Reply (Motion for Leave to File Sur-Reply, R.E. 44)

On August 14, 2020, Appellees-Defendants filed Response to Motion for Leave to File Sur-Reply (Response to Motion for Leave to File Sur-Reply, R.E. 45)

On August 27, 2020, Appellant-Plaintiff filed Reply to Response to Motion for Leave to File Sur-Reply (Reply to Response to Motion for Leave to File Sur-Reply, R.E. 46)

On September 30, 2021, the Lexington Division District Court Denied Appellant-Plaintiff Motion for Leave to File Sur-Reply (Order Denying Motion for Leave to File Sur-Reply, R.E. 47)

On October 12, 2021, the Lexington Division District Court Entered Memorandum Opinion and Order granting Appellees-Defendants Motion for Summary Judgment of three remaining claims of fraud, breach of contract and unjust enrichment (Memorandum Opinion and Order, R.E. 48)

On October 12, 2021, the Lexington Division District Court Entered Final and Appealable Judgment, Dismissing Complaint of Appellant-Plaintiff Peter Canavan Newberry (Judgment, R.E. 49)

On November 2, 2021, Appellant-Plaintiff filed Notice of Appeal (Notice of Appeal, R.E. 50)

## STATEMENT OF FACTS

On December 12, 2011, Plaintiff Peter Newberry and his wife, Kimberly S. Rorick, referred to collectively hereafter as "Plaintiffs", purchased an Easy Water Toxin Shield Whole House Water Filtration System (hereafter "Toxin Shield"), a Revita Filtration System for the kitchen sink, and water testing services from Defendant Service Experts Heating & Air Conditioning LLC. (Complaint, R.E. 1, Page ID # 4) Defendant also conducted business under the name of its parent company, "Service Experts LLC" (Complaint, R.E. 1, Page ID # 3). Plaintiff has filed suit against Service Experts Heating & Air Conditioning LLC and Service Experts, LLC. Both are referred to collectively hereafter as "Defendant."

During a service call to their home by Defendant for a leak in Plaintiffs' Aqua-Pure filtration tank in their Aqua-Pure whole house water filtration system, Defendant, as an inducement for Plaintiffs to purchase Defendant's home water filtration systems and water testing services that same day for $4,200.00, Plaintiffs were offered a discount and promised by Defendant's employees that if at any time

during the first year, if Plaintiffs were not satisfied, Defendant would replace the whole house Toxin Shield system to their satisfaction, or, upon Plaintiffs' request, provide Plaintiffs with a 100% refund of their $4,200, and put their home back the way it was with an Aqua-Pure system in good working order.  Plaintiffs had a whole house Aqua-Pure System in their home at the time of Defendant's first visit to their home, and that entire Aqua-Pure System, including its leaking filtration tank, is what Defendant removed in order to replace it with the whole house Toxin Shield system which Defendant proposed to sell to Plaintiffs. (Response in Opposition to Motion for Summary Judgment, R.E. 41, Page ID # 591 and 592).

As summarized in the Complaint, Defendant improperly installed its new Toxin Shield whole house water filtration system.  After initially denying faulty installation of its new system, and trying to convince Plaintiffs that it was normal for the Toxin Shield to cause home drinking water to run brown and bubble, Defendant admitted that Defendant had installed its system "backwards;" (Complaint, R.E. 1, Page ID # 5) which, unbeknownst to Plaintiffs, resulted in running water contaminated with carcinogenic chemicals through Plaintiffs' drinking water lines and clogging the drain lines with a residue that remained in the plumbing for several years thereafter, killing eight (8) of Plaintiff's cats and dogs, and sickening Plaintiff's wife with chronic and debilitating migraine headaches  (Complaint, R.E. 1, Page ID # 5-7 and 9-11).

6

Although given ample opportunity to correct the problem, accompanied by Defendant's apologies and multiple assurances that it was going to both replace the Toxin Shield whole house filtration system with new systems and correct the problems to Plaintiffs' satisfaction between January 11, 2012 and July 9, 2012, Defendant failed to do so. (Complaint, R.E.1, and Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, R.E. 41-1, Page ID # 591-595). Thus, forcing Plaintiffs in late 2012 (September 3, September 23 and October 1, 2012) to express their dissatisfaction with Defendant's whole house filtration system and, on October 1, 2012, demand their promised 100% refund and restoration of their home back the way it was with the re-installation of an Aqua-Pure system in good working order, as promised by Defendant. (Complaint, R.E. 1, Page ID # 8, para 31, 32 and 33. Defendant's Answer, R.E. 38, Page ID # 538, para 17 and 18). When Defendant broke its promise to remove its system due to Plaintiffs' dissatisfaction, refund Plaintiffs' money, and restore Plaintiffs' home back the way it was with the re-installation of an Aqua-Pure system in good working order, Plaintiff filed its Complaint (Complaint, R.E. 1) on March 16, 2017, less than 5 years after Plaintiffs' October 1, 2012 demand to remove Defendant's system due to Plaintiffs' dissatisfaction, refund Plaintiffs' money, and restore Plaintiffs' home back the way it was with the re-installation of an Aqua-Pure system in good working order (Complaint, R.E. 1, Page ID # 8, para 33.

Defendant's Answer, R.E. 38, Page ID # 538, para 18), and Defendant's subsequent refusal to honor its promise to do so on January 23, 2013, when Defendant offered Plaintiffs $4,200.00, but informed Plaintiffs, for the very first time, that Defendant was going to "sever our relationship" and breach its promise to replace its "EZ Water equipment" with an Aqua-Pure system in good working order, because Defendant had received a "denial from our [Defendant's] insurance" for the Aqua-Pure system which Defendant disposed (Email from Defendant's Plumbing Manager, Jason Snapp to Plaintiff on January 23, 2013, R.E. 41-10, Page ID # 611).

## SUMMARY OF ARGUMENT

The Trial Court erred in its application of statutes of limitations to Plaintiffs' claim after Defendant committed a fraud upon the Trial Court by presenting it with false and misleading statements of fact, which the Trial Court relied upon in granting Defendant's Motion for Summary Judgment. The Trial Court granted Summary Judgment on its mistaken belief that Defendant had repudiated its contract with Plaintiff on January 3, 2012, thus commencing the statutes of limitations on Plaintiff's claims more than five years prior to Plaintiff's commencement of the case *sub-judice* on March 16, 2017 (Memorandum Opinion and Order R.E. 48, Page ID # 715 and 716). Because of Defendant's false and misleading factual statements to the Trial Court, the Trial

Court also misapplied the law with respect to the time of commencement of the applicable Statute of Limitations to a contract allegedly repudiated prior to the time for performance of said contract. Not only did Defendant not repudiate its contract with Plaintiff prior to March 16, 2012, the record clearly shows that Defendant actually continuously continued the performance of its contractual obligations to Plaintiffs up until at least October 1, 2012, (the undisputed date in the record that Plaintiff first demanded performance of the contingent contract obligation to replace the Easy Water whole house filtration system with an Aqua-Pure system, or, as this Court has stated, the first time Plaintiffs demanded performance of Defendant's "contractual obligation to remove and replace upon request." Newberry v. SEHAC, Case: 18-6028, R.E. 26-2, Page 20 (6th Cir. 2020)), and the first time Defendant ever repudiated its contract with Plaintiffs was January 23, 2013, both dates well within all applicable statutes of limitations in the case *sub-judice*. (Furthermore, even if Defendant actually anticipatorily breached or repudiated its contract with Plaintiffs on January 3, 2012 *sub-silento*, Plaintiffs never acknowledged any alleged repudiation, and any such alleged repudiation by Defendant was withdrawn by Defendant the very next day, January 4, 2012, when Defendant continued to perform its contractual obligations after the alleged repudiation).

In its earlier decision to "reverse the district court's judgment dismissing plaintiff's claims for fraud (count seven), breach of contract (count eight), and unjust enrichment (count nine), and remand for further consideration in light of this opinion," this Court stated that "it was premature to dismiss on limitations grounds the three claims based upon the alleged contractual obligation to remove and replace upon request." Newberry v. SEHAC, Case: 18-6028, R.E. 26-2, Page 24 and 20 (6th Cir. 2020).

This Court stated that Defendant's contractual obligation "to remove either or both of [the] water filtration systems and to reinstall Plaintiff's Aqua-Pure system for no additional charge in the event that Plaintiff was dissatisfied with the systems that were purchased from [defendants] 'at any time during the first year of service upon request by Plaintiff'" Id. p. 18, "could be read to require replacement of the old system within a reasonable time of a valid request, and not whenever SEHAC felt like it until the end of the year." Id. p. 19. As a result, in order to determine if the date of commencement of the statutes of limitations was before March 16, 2012, this Court reversed the trial court and remanded to establish the following facts (dates):

1. The date "Plaintiff asked for the removal of the new system and reinstallation of the old system" Id. 19; or

10

2. The date SEHAC stated it would "never" return "to remove the new system" Id. 19.

## **ARGUMENT**

I.  **Whether the Trial Court erred in finding that Plaintiff's claims of fraud (Count Seven), breach of contract (Count Eight), and unjust enrichment (Count Nine) are time barred because the Statutes of Limitation did not commence until the time of performance of the contract allegedly repudiated prior to time for performance, and the Trial Court's denial of Plaintiff's request for an evidentiary hearing.**

## STANDARD OF REVIEW

"Whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." Scifres v. Kraft, 916 S.W.2d 779, 781 (Ky. App., 1996). The statute of limitations is an affirmative defense which the defendant has the burden to demonstrate. Lutz v. Chesapeake Appalachia, LLC, 717 F.3d 459, 464 (6th Cir. 2013). Further, the allegations in the complaint must "affirmatively show that the claim is time-barred" for a motion to dismiss to be granted. Id. (quoting Cataldo v. U.S. Steel Corp., 676 F.3d 542, 547 (6th Cir. 2012). "Whether an action is barred by the statute of limitations is a question of law[,]" "which an appellate court reviews de novo". Ragland v. DiGiuro, 352 S.W.3d 908, 912 (Ky.App. 2010)

11

(quoting Cuppy v. Gen. Acc. Fire & Life Assur. Corp., 378 S.W.2d 629, 631 (Ky. 1964)).

## ARGUMENT

Defendant fraudulently represented and promised to Plaintiffs that it would properly install and service a water filtration system for the whole house and one for the kitchen sink for $4,200, and that Defendant would properly service and/or repair those systems. (Complaint R.E. 1, Page ID # 16 and 17). Defendant further represented that if the new systems which Defendant installed and serviced "were deemed inadequate by Plaintiff for any reason, Defendant would remove its systems and reinstall Plaintiff's Aqua-Pure system at no charge and at any time during the first year of service, upon request by Plaintiff." (Id. Page ID #16). Specifically, "As an inducement to purchase Defendant's home water filtration systems, and water testing services, my wife [Kimberly Rorick] and I [Plaintiff] were promised by Defendant that if at any time during the first year we were not satisfied, Defendant would replace the system to our satisfaction or provide us with a full 100% refund, and put our [Plaintiff's] home back the way it was with an Aqua-Pure system in good working order." (Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment R.E. 41, R.E. 41-1, Page ID #591).

Thus, Defendant promised it would install and service its new water filtration systems in Plaintiffs' home to Plaintiffs' satisfaction, and guaranteed that

promise with a contingent promise that if within a year, if Plaintiff was not satisfied with Defendant's systems or Defendant's service of those systems, upon Plaintiffs' request, Defendant would provide Plaintiffs with a full 100% refund, and put Plaintiffs' home "back the way it was with an Aqua-Pure system in good working order." Id.

After patiently waiting on Defendant for more than nine months while Defendant attempted to properly select the proper equipment, install, remove, repair, service, schedule and attempt to get its new whole-house water filtration system working properly, (which included Defendant's complete and faulty installation and removal of two whole house filtration systems, and multiple attempts to repair, apologies and multiple promises by Defendant, subsequent to its initial defective installation, to "get this resolved and to make you and your family happy with the products that are in your home," by getting a "new system in" "so you [Plaintiff] feel safe in bathing and drinking your water" (Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment R.E. 41, R.E. 41-1, Page ID #592, para 2, quoting Defendant's Plumbing Supervisor, Erik Rocky Wake's January 4, 2012 email to Plaintiff (which was the day after January 3, 2012, the date Defendant intentionally misinformed and misled the trial Court by stating that Defendant "indisputably either breached or repudiated its obligations" under its contract with Plaintiffs, Motion for Summary Judgment R.E. 40, Page ID

# 553)), Plaintiff, on October 1, 2012, expressed his dissatisfaction with Defendant's products and requested that Defendant remove its Easy Water system and reinstall an Aqua-Pure system in Plaintiff's home, per Defendant's contingent promise. (Complaint, R.E. 1, Page ID #8, para 33). Thus, answering this Court's question on remand and establishing the earliest possible date for the commencement of the statutes of limitation on Defendant's contingent contractual obligation which was only triggered, if triggered at all, when and if "Plaintiff asked for the removal of the new system and reinstallation of the old system" (Supra. Newberry v. SEHAC, Case: 18-6028, R.E. 26-2, p. 19 (6th Cir. 2020)), thus making October 1, 2012, the earliest possible date for the commencement of the statutes of limitation, and making Plaintiff's claims filed on March 16, 2017, within the five (5) year statute of limitations period. (Complaint, R.E. 1, Page ID #1).

The same conclusion is true for this Court's second question on remand with respect to Defendant's original contractual obligation to Plaintiff; the installation and service of a whole house water filtration system to the satisfaction of Plaintiff for one year, and the date Defendant breached that promise and stated it would "never" return "to remove the new system or reinstate the older one." (Supra. Newberry v. SEHAC, Case: 18-6028, R.E. 26-2, p. 19 (6th Cir. 2020)).

On January 23, 2013, Defendant's Plumbing Manager, Jason Snapp, apologized to Plaintiff for failing to follow through on his July 9, 2012 promise to

schedule a "new appointment for his plumbers to come to [Plaintiff's] home to correct system" (Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment R.E. 41, R.E. 41-1, Page ID #595, para 15), and then, instead of continuing to honor its contractual obligation to install, service and repair its system to the satisfaction of Plaintiffs, Defendant's Plumbing Manager, for the very first time (on January 23, 2013), informed Plaintiff that Defendant was reneging on its contractual obligations, both the original obligation to install and service its whole house water filtration system to Plaintiff's satisfaction, and also on Defendant's contingent obligation to re-install another Aqua-Pure system in Plaintiff's home if requested by Plaintiff (as Plaintiff had already requested on October 1, 2012). Defendant's Plumbing Manager, again for the first time, breached its contract with Plaintiffs, and informed Plaintiff that this "would sever our relationship" (Id. R.E. 41-10, Page ID # 611). Defendant only stating a "denial from our insurance" for Defendant's disposal of the Aqua-Pure system, as the only reason for Defendant's breach. Id.. Clearly, Defendant was counting on payment from its insurer to purchase another Aqua-Pure system for reinstallation in Plaintiffs' home, in order to fulfill Defendant's contingent contractual obligation, once the contingency was removed by Plaintiff's October 1, 2012, expression of dissatisfaction and demand for reinstallation of an Aqua-Pure system. Thus, exposing yet another misleading factual statement to the Court by Defendant;

15

Defendant's alleged breach or repudiation of its contract, by "no later than January 3, 2012." (Motion for Summary Judgment, R.E. 40, Page ID # 553).

Thus, this Court's two (2) specific questions on remand have been directly and specifically answered, and in the record. October 1, 2012 was the first date that Plaintiff requested performance of Defendant's contingent promise to re-install an Aqua-Pure system upon Plaintiff's request, and January 23, 2013 was the first date Defendant reneged on its promises and informed Plaintiffs that it was not going to perform its contract with Plaintiffs. Newberry v. SEHAC, Case: 18-6028, R.E. 26-2, Page 19 (6th Cir. 2020). Both dates, being less than five (5) years prior to Plaintiffs initiating this action against Defendant on March 16, 2017. (Complaint, R.E. 1)

**Defendant's performance of its obligation to reinstall an Aqua-Pure system was a contingent obligation which was not due, and may have never come due, when Defendant claimed it repudiated that obligation**

Defendant's obligation to "put our [Plaintiff's] home back the way it was with an Aqua-Pure system in good working order." (Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment R.E. 41, R.E. 41-1, Page ID # 591, para 1) was a contingent obligation, the performance of which may never been required, but, if required at all, was not required until after Plaintiff expressed dissatisfaction with Defendant's original underlying contract obligation,

and its performance requested (which did not occur until October 1, 2012, (Complaint, R.E. 1, Page ID # 8, para 33, Answer, R.E. 38, Page ID # 18), only after Defendant failed to perform its original contract obligation of installation of a new Easy Water system satisfactory to Plaintiff, (Newberry Affidavit, R.E. 41-1, Page ID # 591), which Defendant first repudiated on January 23, 2013. (Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment R.E. 41-10, Page ID # 611), when Defendant's Plumbing Manager, again for the first time, informed Plaintiff that this "would sever our relationship" (Id. R.E. 41-10, ID# 611).

**An anticipatory repudiation of a contract occurs when a promisor withdraws from an obligation prior to the agreed upon performance time.**

Defendant could not breach its contingent contractual obligation prior to the time for the performance of that obligation, "upon request by Plaintiff." (Complaint, R.E. 1, Page ID #16, para 89). At best, changing all of the false statements and mischaracterizations foisted upon the Trial Court by Defendant in the case *sub-judice* to allow all of Defendant's misstatement of facts to be true, Defendant's acts would amount to an anticipatory breach of its obligation, and, unless that repudiation was accepted by Plaintiff prior to the time for performance by Defendant, the statute of limitations would not commence until the time of performance, which only arose upon Plaintiff's expression of dissatisfaction and

17

request for performance (which did not occur until October 1, 2012, Complaint R.E. 1, Page ID # 8, para 33).

The anticipatory repudiation of a contract occurs when a promisor withdraws from an obligation prior to the agreed upon performance time. Kinsey v. United States, 852 F.2d 556, 558 (Fed. Cir. 1988). In the event of an anticipatory repudiation, the statutory period of limitations does not begin until the fixed day of contractual performance or upon the promisee's acknowledgment of the repudiation date as the time of the contract breach. Roehm v. Horst, 178 U.S. 1, 13 (1900). In Franconia Associates v. United States 536 U.S. 129 (2002), the United States Supreme Court considered whether the United States Government's (Government) subsequent addition of restrictions on loan agreements was either an immediate breach of contract by the Government, or a repudiation of the Government's initial contractual obligation. Id. at 146-47. The Court concluded that the Government's added restrictions repudiated the contract, thus moving the date of breach to the time fixed for performance, and therefore, within the statute of limitations' timeframe. Id. at 146-47, 150.

In the case *sub-judice*, even if Defendant's act of informing Plaintiff that Plaintiff's Aqua-Pure equipment taken by Defendant was "disposed of and would not be returned" (Motion for Summary Judgment, R.E. 40, Page ID # 552, which was Defendant's mischaracterization of an email from Defendant to Plaintiff,

18

which actually read "We do not have any way of returning *that specific unit* to you", Id. 40-10, Page ID # 572, emphasis added) was an anticipatory repudiation of its contractual obligation to Plaintiff "that if at any time during the first year we were not satisfied, Defendant would replace the system to our satisfaction or provide us with a full 100% refund, and put our [Plaintiff's] home back the way it was with an Aqua-Pure system in good working order." (Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment R.E. 41, R.E. 41-1, Page ID # 591), Kinsey v. United States, 852 F.2d 556, 558 (Fed. Cir. 1988), the statutory period of limitations would not have begun until the fixed day of contractual performance (upon Plaintiff's dissatisfaction followed by Plaintiff's request to put Plaintiff's home "back the way it was with an Aqua-Pure system in good working order." Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment R.E. 41, R.E. 41-1, Page ID #591, para 1). Accordingly, given the fact that Plaintiff never requested reinstallation of an Aqua-Pure system in his home until October 1, 2012, (Complaint, RE 1, ID# 8), nor is there any evidence that Plaintiff acknowledged Defendant's illusory *sub-silento* alleged repudiation, October 1, 2012, would be the earliest date of commencement of the statutes of limitation in the case *sub-judice*, not January 3, 2012, as Defendant misled the trial Court to believe.

It is well settled law that in the event of an anticipatory repudiation, the statutory period of limitations does not begin until the fixed day of contractual performance or upon the promisee's acknowledgment of the repudiation date as the time of the contract breach. Roehm v. Horst, 178 U.S. 1, 13 (1900), Franconia Associates v. United States 536 U.S. 129, 146-47, 150. (2002), the date of Plaintiff's request for performance upon its dissatisfaction within the first year, or upon the Plaintiff's acknowledgment of the repudiation date as the time of the contract breach. Roehm v. Horst, 178 U.S. 1, 13 (1900), Franconia Associates v. United States 536 U.S. 129 (2002).

Surely, there was never any "acknowledgment" by Plaintiff of Defendant's alleged illusory "as early as December 30, 2011, and no later than January 3, 2012" breach or repudiation (Motion for Summary Judgment, R.E. 40, Page ID # 553), as evidenced by the continued and uninterrupted correspondence between Plaintiff and Defendant, which included the very next day, January 4, 2012, and continued until October 1, 2012, which evidenced the coordination between Defendant and Plaintiff, of Defendant's work at Plaintiffs' home by Defendant and Defendant's continued performance of its original contract with Plaintiff, well after January 3, 2012, including Defendant's ordering of a second new whole house water filtration system, Defendant's installation of that second new whole house water filtration system after January 3, 2012, and Defendant's scheduling of repair work on its

20

second newly installed system, all of which continued without any complaint, repudiation or breach by Defendant, until January 23, 2013, when Defendant first informed Plaintiff that Defendant was not going to reinstall any whole house water filtration system, and that Defendant was severing its relationship with Plaintiff because Defendant's insurer was not going to pay for an Aqua-Pure system. (Newberry Affidavit, R.E. 41-1, Page ID # 591, 592, 593, 594, 595, January 4, 2012 Email from Defendant to Plaintiff, R.E. 41-2, Page ID # 599, January 4, 2012 Email from Defendant to Plaintiff, R.E. 41-2, Page ID # 600, January 6, 2012 Email from Defendant to Plaintiff, R.E. 41-4, Page ID # 602, January 6, 2012 Email from Defendant to Plaintiff, R.E. 41-5, Page ID # 603, May 10, 2012 Email from Defendant to Plaintiff, R.E. 41-7, Page ID # 606, May 10, 2012 Email from Defendant to Plaintiff, R.E. 41-7, Page ID # 607, June 19, 2012 Email from Defendant to Plaintiff, R.E. 41-8, Page ID # 608, January 23, 2013 Email from Defendant to Plaintiff, R.E. 41-10, Page ID # 611, and Email from Defendant to Plaintiff on July 9, 2012, with Defendant's request for dates for scheduling Defendant's plumbers to visit Plaintiffs' home to work on Defendant's newly installed, but still malfunctioning whole house system, Newberry Affidavit, R.E. 41-1, Page ID # 595, para 15) .

**Defendant's "disposed of" argument is immaterial and irrelevant because Plaintiffs' broken Aqua-Pure system had nothing to do with Defendant's contract obligations to Plaintiffs.**

Defendant's argument that by informing Plaintiff by "no later than January 3, 2012" that Defendant had "disposed of" Plaintiffs' old broken equipment, Defendant had somehow "repudiated its obligations" is wholly without merit, both factually and legally. First, as set out above, Defendant on January 3, 2012, was under no contractual obligation to reinstall any Aqua-Pure system in Plaintiff's home, as no reinstallation was ever requested by Plaintiff. Secondly, the specific broken Aqua-Pure equipment (filtration tank) which was removed from Plaintiffs' home drinking water system by Defendant, and then stolen from Plaintiff's home by Defendant is both irrelevant and immaterial to Plaintiff's claims for breach of contract. That particular piece of equipment was only relevant and material to Plaintiffs' conversion claim (Complaint R.E. 1, page ID# 19 and 20). Plaintiff incorporates by reference herein Plaintiff Kimberly Rorick's Appellate Brief in its entirety (Rorick v SEHAC, Case 21-6061 (6th Cir. 2020)). The actual Aqua-Pure equipment removed, and then stolen by Defendant was never to be reinstalled in Plaintiffs' home. That equipment was the personal property of Plaintiff, who, prior to Defendant's theft of Plaintiffs' equipment from Plaintiff's home, "expressly told Defendant SEHAC to leave the Aqua-Pure backwash filter system in his possession because he intended to get it serviced by someone else and use it with

22

an irrigation system" for a pond to provide water for rescued cats and dogs living in Plaintiffs' barn. (Complaint, R.E. 1, Page ID # 19, para 106).

Defendant was well aware of both of these facts, which is apparently why Defendant committed a fraud upon the trial Court to overcome these fatal legal hurdles to the granting of its Motion for Summary Judgment, and specifically falsely asserted that on "December 30, 2011", "Mr. Newberry [Plaintiff] reiterates his demand that the Aqua-Pure system be returned to his home and reinstalled." (MSJ, R.E. 40, ID# 551), and falsely claimed that "SEHAC told Mr. Newberry [Plaintiff] - no less than three times beginning as early as December 30, 2011, and no later than January 3, 2012 – that the Aqua-Pure system … would not be reinstalled."  (Motion for Summary Judgment, R.E. 40, Page ID # 553). Both of the statements are blatantly false.

## **ARGUMENT**

II.   Whether the Trial Court erred in its denial of Plaintiff's request for sanctions and attorney fees against Defendant for Defendant's commission of fraud upon the Court with its material and knowing misrepresentations of fact to the Court, which caused the Trial Court to err in both its finding of facts, application of law, and its application of the summary judgment standard, and the Trial Court's denial of Plaintiff's request for an evidentiary hearing.

Plaintiff Petitions this Court to dismiss the Summary Judgment obtained by Defendant's fraud upon the Court, sanction Defendant, and award attorney fees to Plaintiff.

23

## STANDARD OF REVIEW

"Whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." Scifres v. Kraft, 916 S.W.2d 779, 781 (Ky. App., 1996). "The inherent power of a federal court to investigate whether a judgment was obtained by fraud, is beyond question". Hazel-Atlas Co. v. Hartford Empire Co., 322 U.S. 238, 64 S. Ct. 997 (1944), Chambers v. NASCO, Inc., 501 U.S. 32, 111 S. Ct. 2123 (1991), Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585 (9th Cir. 1983) ("[C]ourts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice."), Eppes v. Snowden, 656 F. Supp. 1267 (E.D. Ky 1986).

## ARGUMENT

In the case *sub-judice*, Plaintiff specifically called out Defendant's fraud upon the Court and requested sanctions against Defendant for its "blatant material misrepresentations of fact made by Defendant, and Defendant's lack of candor to the Court by not citing evidence which clearly contradicted the alleged factual basis for Defendant's Motion for Summary Judgment" (Response to Motion for Summary Judgment, R.E. 41, Page ID # 589). The trial Court, however, refused Plaintiff's request, "the Court cannot do so because the request has not been

presented in the form of a motion and not in a response." (Memorandum Opinion and Order, R.E. 48, Page ID # 714).

Federal Courts have the inherent power to inquire into the integrity of its own judgments. The matter is not one of merely private concern subject to the action or inaction of the litigants, but is one of vast public importance, so that it becomes immaterial that the injured party may have been derelict in bringing the fault to the court's attention in strict accordance with a particular rule. On this point, the Supreme Court in Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238, at page 246, 64 S. Ct. 997, at page 1001, 88 L. Ed. 1250 (1944), where also a charge of fraud in the proceedings was made, said:

"* * * This matter does not concern only private parties. There are issues of great moment to the public in a patent suit. Mercoid Corporation v. Mid-Continent Investment Co., 320 U.S. 661, 64 S. Ct. 268 [88 L. Ed. 376]; Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, [788], 62 S. Ct. 402, 86 L. Ed. 363. Furthermore, tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated

consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud."

"The inherent power of a federal court to investigate whether a judgment was obtained by fraud, is beyond question". Hazel-Atlas Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S. Ct. 997 (1944), Chambers v. NASCO, Inc., 501 U.S. 32, 111 S. Ct. 2123 (1991), Wyle v. R.J. Reynolds Indus., Inc., 709 F.2d 585 (9th Cir. 1983) ("[C]ourts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice."), Eppes v. Snowden, 656 F. Supp. 1267 (E.D. Ky 1986).

### Defendant's Fraud Upon the Court, Misrepresentation and Lack of Candor

Despite Plaintiffs' attempts over the nearly ten (10) years of this action's life, there has been no discovery in the case *sub-judice*. As far back as October 9, 2013, Judge Bertelsman, when he learned that Defendant had refused to engage in discovery and provide Plaintiff with the identity of the chemicals that Defendant

had discharged into the home drinking water of Plaintiffs' home, as a result of Defendant installing its first Toxin Shield home water filtration system backwards and dumping its chemical contents into Plaintiffs' drinking water (Complaint R.E. 1, Page ID # 4, 5 and 6, Response to Motion for Summary Judgment, R.E. 41, Page ID # 581), chastised Defendant and Defendant's counsel stating "The Court doesn't look kindly on people who stall just for the sake of stalling." "Court doesn't like stonewalling" (Court transcript of Judge William O. Bertelsman, October 9, 2013, R.E. 13-9, Page ID #229, lines 12, 13 and 16).

As a result, Judge Bertelsman ordered discovery. However, shortly thereafter, Defendant's counsel represented that Defendant's testing of Plaintiff's drinking water showed it was safe for Plaintiffs and their pets to drink and use. (Complaint, R.E. 1, Page ID # 9, Response to Motion for Summary Judgment, R.E. 41, Page ID # 581). However, over the next few years, Plaintiffs became ill, and eight (8) of Plaintiffs' family pets, (rescued dogs and cats), all died prematurely from cancers. (Complaint, R.E. 1, Page ID # 9, 10 and 11). Plaintiffs then had the water passing through Defendant's Toxin Shield whole-house water filtration system tested and discovered that contrary to the representations and assurances by Defendant and Defendant's counsel that Plaintiffs' drinking water "was safe for Plaintiff and his family to drink and use." (Complaint, R.E. 1, Page ID # 9, 10 and 11). Plaintiffs' home drinking water, and the pets' sole source of any water, was

"contaminated with known carcinogenic compounds at dangerously high levels."
(Complaint, R.E. 1, Page ID # 10 and 11),

   To date, Defendant has still not engaged in discovery. Defendant has possession
of all of the documents and emails establishing October 1, 2012 and January 23,
2013 as the operative dates, specifically requested by this Court on remand, to
determine the commencement of the statutes of limitation, (Newberry v. SEHAC,
Case: 18-6028, R.E. 26-2, Page 19 (6th Cir. 2020)), but Defendant failed to inform
the trial Court of these facts. Instead of candor with the trial Court, Defendant on
remand, failed to disclose the evidence sought by this Court on remand, and
actively committed fraud upon the Trial Court by presenting false and misleading
statements to the trial Court in support of its Motion for Summary Judgment.
Newberry v. SEHAC, Case: 18-6028, R.E. 26-2 at p. 19 (6th Cir. 2020).

       In particular, Defendant never disclosed the facts that Plaintiff never
requested the reinstallation of an Aqua-Pure system until October 1, 2012,
(Complaint, R.E. 1 ,Page ID #8, para 33), Newberry v. SEHAC, Case: 18-6028,
R.E. 26-2, Page 19 (6th Cir. 2020)), and Defendant never informed Plaintiffs that
Defendant had repudiated or breached its contractual obligations to Plaintiffs, until
January 23, 2013, when Defendant, for the first time, informed Plaintiff that
Defendant was reneging on its contractual obligations, (both the original obligation
to install and service its whole house water filtration system to Plaintiff's

satisfaction, and also on Defendant's contingent obligation to re-install another Aqua-Pure system in Plaintiff's home if requested by Plaintiff, (as Plaintiff had already requested Defendant to do on October 1, 2012)), and informed Plaintiff that this "would sever our relationship" (Newberry Affidavit, R.E. 41-10, Page ID # 611, January 23, 2013 Email from Defendant to Plaintiff, and Newberry v. SEHAC, Case: 18-6028, R.E. 26-2, Page 19 (6th Cir. 2020)).

### Defendant's Active Fraud

After not disclosing the facts sought by this Court on remand, Defendant then actively committed a fraud upon the trial Court by fraudulently asserting false statements of fact. The first being Defendant's false statement that on "December 30, 2011" "Mr. Newberry reiterates his demand that the Aqua-Pure system be … reinstalled." (Motion for Summary Judgment R.E. 40, Page ID # 553). A review of the email cited by Defendant clearly demonstrates Defendant's deceptive mischaracterization. The cited email was about ongoing work being done by Defendant to get its newly installed system working properly, and the return of Plaintiff's property taken by Defendant. Contrary to Defendant's fraudulent representation to the trial Court, Plaintiff never demanded that his or any Aqua-Pure system be "reinstalled". (Motion for Summary Judgment, R.E. 40-4, Page ID # 563). Not only is Defendant's statement completely false, (Plaintiff never made that request until October 1, 2012, Complaint, R.E. 1, Page ID # 8, para 33), but

Defendant compounds its false statement to the trial Court by falsely stating that Plaintiff had made this request before December 30, 2011, as well. Another false statement of fact.

In further support of its Motion for Summary Judgment, and its falsely asserted defense that Defendant "indisputably either breached or repudiated its contractual obligations under the alleged oral contract to remove the whole-house system", (Motion for Summary Judgment R.E. 40, Page ID # 553), Defendant, in a fraudulent attempt to establish a violation of the five (5) year statute of limitations to Plaintiff's March 16, 2017, filing of its Complaint, also falsely answered this Court's second question on remand (Newberry v. SEHAC, Case: 18-6028, R.E. 26-2, Page 19 (6th Cir. 2020)), and falsely asserted that Defendant "never repaired or removed the whole-house system" prior to March 16, 2012   (Motion for Summary Judgment R.E. 40, Page ID # 553). In fact, prior to March 16, 2012, Defendant had "removed" and replaced "the whole-house system" in Plaintiffs' home twice (the last removal and replacement of the whole-house system by Defendant  occurring on January 11, 2012, after Defendant allegedly "indisputably either breached or repudiated its obligations" "no later than January 3, 2012" (another false statement by Defendant, Id. R.E. 40, Page ID # 553)), and Defendant had "repaired" the whole-house system multiple times before and after January 3, 2012, including corresponding with Plaintiff to schedule repairs to, and removal

30

and replacement of, the whole-house system well after March 16, 2012, up until July 9, 2012. (Newberry Affidavit, R.E. 41-1, Page ID # 591, 592, 593, 594, 595, January 4, 2012 Email from Defendant to Plaintiff, R.E. 41-2, Page ID # 599, January 4, 2012 Email from Defendant to Plaintiff, R.E. 41-2, Page ID # 600, January 6, 2012 Email from Defendant to Plaintiff, R.E. 41-4, Page ID # 602, January 6, 2012 Email from Defendant to Plaintiff, R.E. 41-5, Page ID # 603, May 10, 2012 Email from Defendant to Plaintiff, R.E. 41-7, Page ID # 606, May 10, 2012 Email from Defendant to Plaintiff, R.E. 41-7, Page ID # 607, June 19, 2012 Email from Defendant to Plaintiff, R.E. 41-8, Page ID # 608, January 23, 2013 Email from Defendant to Plaintiff, R.E. 41-10, Page ID # 611, and Email from Defendant to Plaintiff on July 9, 2012, with Defendant's request for dates for scheduling Defendant's plumbers to visit Plaintiffs' home to work on Defendant's newly installed, but still malfunctioning whole house system, Newberry Affidavit, R.E. 41-1, Page ID # 595, para 15). Again, all of the cited correspondence is between Defendant and Plaintiffs, and all is conclusive evidence of Defendant honoring its contractual obligations to Plaintiffs after January 3, 2012 (the date Defendant falsely asserted that it "indisputably either breached or repudiated its obligations" to Plaintiff (Motion for Summary Judgment, R.E. 40, Page ID # 553)), up through July 9, 2012, but never disclosed to the trial Court by Defendant, which was fraudulently deceived by Defendant that Defendant "indisputably either

breached or repudiated its obligations" to Plaintiffs by "no later than January 3, 2012" (Id.).

**Defendant's Assertions, Arguments and Characterizations are False**

Contrary to Defendant's blatantly false statement of fact to the trial Court, Plaintiff never demanded that any Aqua-Pure system be reinstalled on December 30, 2011 (Motion for Summary Judgment R.E. 40, Page ID # 551), or at anytime prior to October 1, 2012, and Defendant never informed Plaintiff that an Aqua-Pure system "would not be reinstalled" (Motion for Summary Judgment R.E. 40, Page ID # 553), until January 23, 2013, not "as early as December 30, 2011, and no later than January 3, 2012" (Motion for Summary Judgment R.E. 40, Page  ID # 553).

Defendant never "breached or repudiated its obligations" by telling Plaintiff "that the Aqua-Pure system had been disposed of and would not be re-installed" "beginning as early as December 30, 2011, and no later than January 3, 2012" (Id.). Defendant also misled the Trial Court by falsely claiming that on December 30, 2011, Plaintiff made a "demand that the Aqua-pure system be … reinstalled." (Id., Page ID # 551). A review of the email cited by Defendant clearly demonstrates Defendant's deceptive mischaracterization. The cited email was about ongoing work being done by Defendant to get its newly installed system working properly, and the return of Plaintiff's property taken by Defendant.

32

Contrary to Defendant's fraudulent representation to the trial Court, Plaintiff never demanded that his or any Aqua-Pure system be "reinstalled". (December 30, 2011, Email from Plaintiff to Defendant, R.E. 40-4, Page ID # 563). Plaintiff simply wanted his property returned, once he learned that it had been taken without his knowledge or consent (Id.), and in direct violation of his expressed wishes to keep it for use on a pond for water for rescue cats and dogs in his barn. The actual Aqua-Pure equipment removed, and then stolen by Defendant was never to be reinstalled in Plaintiffs' home. That equipment was the personal property of Plaintiff, who, prior to Defendant's theft of Plaintiffs' equipment from Plaintiff's home, "expressly told Defendant SEHAC to leave the Aqua-Pure backwash filter system in his possession because he intended to get it serviced by someone else and use it with an irrigation system" for a pond to provide water for rescued cats and dogs living in Plaintiffs' barn. (Complaint, R.E. 1, Page ID # 19, para 106). Defendant was fully aware of these facts (and has never denied such facts, Answer, R.E. 38, Page ID # 539, para 23). Nevertheless, with this Court's Order on remand in hand, Defendant concocted a scheme to defraud the trial Court with false evidence of a fictitious earlier breach that would render Plaintiffs' claims "time-barred" (Motion for Summary Judgment R.E. 40, Page  ID # 554) by fraudulently representing to the trial Court that Plaintiff's equipment (stolen by Defendant and then allegedly "disposed of") was requested by Plaintiff to be reinstalled in his home, and because

Defendant disposed of it, and informed Plaintiff it had disposed of it, Defendant had "indisputably either breached or repudiated its contractual obligations" (Motion for Summary Judgment R.E. 40, Page ID # 551, 552 and 553).

Defendant's fraud upon the Court carried the day, as the trial Court granted Judgment in favor of Defendant, despite the fact that three (3) days after December 30, 2011, (the date Defendant fraudulently told the trial Court that Plaintiff reiterated "his demand that the Aqua-Pure system be returned to his home and reinstalled." (Id. Page ID # 551), Plaintiff emailed Defendant with requests that completely contradict and expose Defendant's false statements to the trial Court: On January 2, 2012, Plaintiff specifically requested the following regarding the installation of the second new whole house water system by Defendant (which Defendant installed nine (9) days later, on January 11, 2012):

> "3. Accordingly, once Easy Water identifies the correct system to filter my water from my cistern, I need your company to do the following immediately:
>
> a. Install a new and correct Easy Water system (after removing the previously installed malfunctioning, leaking and damaged Iron Shield system)",

and last request made by Plaintiff in Plaintiff's email to Defendant on January 2, 2012,

> *"g. Return my Aqua-pure system removed from property without my knowledge or authorization."*

(January 2, 2012, Email from Plaintiff tom Defendant's Plumbing Supervisor, Jason Snapp, R.E. 40-7, Page ID # 568).

Clearly, contrary to Defendant's false representations to the trial Court, (Motion for Summary Judgment, R.E. 40, Page ID # 551), Plaintiff never demanded that an Aqua-Pure system be reinstalled on December 30, 2011." (Id., Page ID # 551). That fact is further evidenced above by Plaintiff's request three (3) days later for the proper installation of "a new and correct Easy Water system" which he purchased from Defendant, to replace the "malfunctioning, leaking and damaged Iron Shield system" which Defendant previously installed in error (January 2, 2012, Email from Plaintiff tom Defendant's Plumbing Supervisor, Jason Snapp, R.E. 40-7, Page ID # 568). In fact, the situation was quite the opposite, as deceivingly portrayed by Defendant to the trial Court, Plaintiff wasn't demanding that an Aqua-Pure system be reinstalled in his home, Plaintiff was in fact giving Defendant an opportunity to do what Defendant promised, to install a new whole house water filtration system to Plaintiff's satisfaction (after Defendant screwed up initial installation by installing the wrong system, and installing it

backwards) (Complaint RE 1, Page ID # 4-5, para 16 and 17). And Defendant wasn't breaching or repudiating its contract. Defendant was ordering and installing a new Easy Water whole house filtration system to correct the problems with the previous system it installed incorrectly nine (9) days later, a week after Defendant falsely informed the trial Court that Defendant had "indisputably either breached or repudiated its obligations", after blatantly and knowingly making factual misrepresentations of fact to the trial Court by telling it that Plaintiff had once again demanded the reinstallation of his broken Aqua-Pure system, along with several other false statements of fact. (Motion for Summary Judgment, R.E. 40, Page ID # 551, 552 and 553)

It's a fact. Despite its false statement to the Trial Court that it repudiated its contract with Plaintiff "no less than three times beginning as early as December 30, 2011, and no later than January 30, 2012", Defendant did both order and install a new Easy Water whole house water filtration system after January 3, 2012, as evidenced in the record by Defendant's Plumbing Supervisor on January 6, 2012, confirming Defendant's ordering of the new whole house system and its installation. "The Iron Shield was ordered." "My main concern is to get the new system in … so you feel safe in bathing and drinking your water." January 6, 2012, (Email from Defendant's Plumbing Supervisor to Plaintiff, R.E. 41-1, ID# 593, para 5, and January 4, 2012, Email from Defendant's Plumbing Supervisor to

Plaintiff, R.E. 41-2, Page ID # 599). Which was installed on January 11, 2012 (Newberry Affidavit, R.E. 41-1, Page ID # 593, para 6 and 7), thus exposing two more false statements made by Defendant to the Trial Court: Defendant's statement that "Sehac never repaired or removed the whole house system" (Motion for Summary Judgment, R.E. 40, Page ID # 553), and Defendant's false statement to the trial Court that "Sehac indisputably either breached or repudiated its obligations" by "no later than January 3, 2012". (Id.).

How can Defendant "indisputably either breach or repudiate its obligations" under its contract with Plaintiff by "no later than January 3, 2012" (Motion for Summary Judgment, R.E. 40, Page ID # 553), when on January 6, 2012 Defendant ordered a new whole house water filtration system to be installed in Plaintiff's home (Newberry Affidavit, R.E. 41-1,Page  ID # 593, para 5, and January 4, 2012, Email from Defendant's Plumbing Supervisor to Plaintiff, RE 41-2, Page  ID # 599), and a "new system" was "installed by Defendant on January 11, 2012" (Newberry Affidavit, R.E. 41-1, Page ID # 593, para 6 and 7)?!

Why did Defendant omit all of these contradictory emails and evidence from its filings with the trial Court, and falsely state the opposite to the trial Court when it had actual knowledge that its statements to the trial Court were false, and Defendant was in possession of the evidence proving Defendant's statements to the trial Court were false?

37

To obtain a judgment by fraud (Hazel-Atlas Co. v. Hartford Empire Co., 322 U.S. 238, 64 S. Ct. 997 (1944)), by willfully deceiving the trial Court and engaging in "conduct utterly inconsistent with the orderly administration of justice.", Eppes v. Snowden, 656 F. Supp. 1267 (E.D. Ky 1986).

Faced with this Court's charge on remand to establish two (2) dates for the commencement of statutes of limitations on Plaintiffs' claims, and saddled with the unavoidable and indisputable fact that Defendant did not breach or repudiate its primary contractual obligation with Plaintiffs until January 23, 2013, and that Plaintiffs never requested performance of Defendants' contingent contractual obligation until October 1, 2012, both dates well within the five (5) year statutes of limitations for Plaintiffs' claims, Defendant put in motion a "scheme ... designed to improperly influence the court in its decision" on Defendant's Motion for Summary Judgment. England v. Doyle, 281 F.2d 304, 309 (9th Cir. 1960). And, so far, it has worked for the "stonewalling" Defendant, who, ten years later, has still never produced any discovery, not one document, including the "test results" which Defendant said were "fine", and then told Plaintiff and his family the water coming out of Defendant's home water filtration system was "safe to drink and use", but, in fact, turned out to be filled with carcinogenic compounds at dangerously high levels, resulting in  eight (8) dead family pets and sick Plaintiffs, never sat for a deposition, never answered one question,  never participated in any

evidentiary hearing, and has escaped all accountability and liability for contaminating a family's drinking water, falsely telling the family that Defendant tested their drinking, falsely telling the family that their water tested "fine", and is "safe to drink and use" (Complaint, R.E. 1), and then deceived the Court with more false statements.

Is that why Defendant committed a fraud upon the Court?

## CONCLUSION AND RELIEF SOUGHT

Plaintiff prays this Court find that the lower court erred in:

1. Finding that Plaintiff's claims of fraud (Count Seven), breach of contract (Count Eight), and unjust enrichment (Count Nine) are time barred because the Statutes of Limitation.

2. Denying Plaintiff's request for sanctions against Defendant for Defendant's commission of fraud upon the Court with its material and knowing misrepresentations of fact to the Court, which caused the Trial Court to err in both its finding of facts, application of law, and its application of the summary judgment standard.

3. Not conducting evidentiary hearings for a proper legal and factual analysis and application of the statutes of limitation, and Defendant's fraud upon the Court, Defendant's misrepresentation of facts to the Court, and Defendant's lack of candor with the Court.

4. Plaintiff prays this Court DISMISS the Summary Judgment obtained by Defendant's fraud upon the Court, SANCTION Defendant, and AWARD attorney fees to Plaintiff.

5. Plaintiff prays this Court REVERSE the grants of dismissal and REMAND for further proceedings.

Respectfully Submitted,

s/ Peter Canavan Newberry
Peter Canavan Newberry, Plaintiff Pro Se
1217 Criswell Road
Berry, Kentucky 41003
Direct Dial: (513) 608-4312
E-Mail:  peter.newberry@fuse.net

No. 21-6057

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| **PETER CANAVAN NEWBERRY,** | ) |
| | ) |
| **Appellant-Plaintiff** | ) |
| **v.** | ) |
| | ) |
| **SERVICE EXPERTS HEATING** | ) |
| **& AIR, et al.** | ) |
| | ) |
| **Appellees-Defendants** | ) |

## CERTIFICATE OF COMPLIANCE

The undersigned Appellant-Plaintiff, Peter Canavan Newberry, certifies pursuant to Fed. R. App. P. 32(a)(7)(B) that the Brief of Appellant-Plaintiff complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this Brief contains 40 pages (8964 words) excluding the parts of the Brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  In addition, this Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Word Office 365, Times New Roman font 14 point size, with footnotes in Times New Roman font 14 point size.


By:   s/ Peter Canavan Newberry         Date:       January 27, 2022
      Appellant-Plaintiff

x

No. 21-6057

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| **PETER CANAVAN NEWBERRY,** | ) |
| | ) |
| **Appellant-Plaintiff** | ) |
| **v.** | ) |
| | ) |
| **SERVICE EXPERTS HEATING** | ) |
| **& AIR, et al.** | ) |
| | ) |
| **Appellees-Defendants** | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on the ____27th___ day of   January   2022,   I electronically filed the foregoing Brief of Appellant-Plaintiff with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to Defendants' attorneys of record.:  Hon. John David Dyche, Esq., and Hon. Gregory Scott Gowen, Esq.

By:    s/ Peter Canavan Newberry
          Appellant-Plaintiff

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

R.E. 1        Complaint (March 16, 2017)

R.E. 10       Motion to Dismiss for Failure to State a Claim (April 17, 2017)

R.E. 11       Motion to Dismiss for Failure to State a Claim (April 17, 2017)

R.E. 12       Motion to Dismiss for Failure to State a Claim (April 17, 2017)

R.E. 13       Response to Motion to Dismiss for Failure to State a Claim (May 8, 2017)

R.E. 14       Response to Motion to Dismiss for Failure to State a Claim (May 8, 2017)

R.E. 15       Response to Motion to Dismiss for Failure to State a Claim (May 8, 2017)

R.E. 17       Reply to Response to Motion to Dismiss for Failure to State a Claim (May 22, 2017)

R.E. 18       Reply to Response to Motion to Dismiss for Failure to State a Claim (May 22, 2017)

R.E. 19       Reply to Response to Motion to Dismiss for Failure to State a Claim (May 22, 2017)

R.E. 21       Memorandum in Opposition to Motion to Dismiss for Lack of Jurisdiction (April 5, 2018)

R.E. 26       Motion to Transfer (June 15, 2018)

R.E. 27       Response to Motion to Transfer (June 20, 2018)

R.E. 28       Reply to Response to Motion to Transfer (July 4, 2018)

R.E. 30       Memorandum Opinion & Order on Motion to Transfer (August 28, 2018).

R.E. 31       Judgment Dismissal With Prejudice (August 29, 2018)

R.E. 32        Notice of Appeal (September 28, 2018)

R.E. 35        Judgment (March 5, 2020)

R.E. 38        Answer (April 13, 2020)

R.E. 40        Motion for Summary Judgment (June 22, 2020)

R.E. 41        Response in Opposition to Motion for Summary Judgment (July 13, 2020)

R.E. 43        Reply to Response to Motion for Summary Judgment (July 27, 2020)

R.E. 44        Motion for Leave to File Sur-Reply (July 29, 2020)

R.E. 45        Response to Motion for Leave to File Sur-Reply (August 14, 2020)

R.E. 46        Reply to Response to Motion for Leave to File Sur-Reply (August 27, 2020)

R.E. 47        Order Denying Motion for Leave to File Sur-Reply (September 30, 2021)

R.E. 48        Memorandum Opinion and Order (October 12, 2021)

R.E. 49        Judgment (October 12, 2021)

R.E. 50        Notice of Appeal (November 2, 2021)